CaRütheus, J.,
delivered the opinion of the Court.
Six bills were filed by the creditors of Samuel Gr. Hays, against the Bank of Nashville and others, to impeach and set aside for fraud, two deeds of trust made by said Hays, covering all his property of the value of about §60,000 as alleged, to Edmund Cooper, as trustee to secure the debts specified in said deeds. These 11s were consolidated and heard together, when they *529 were all dismissed by the Chancellor, and the deeds of trust held to be good and valid.
The first deed was made on the 8th of August, 1856, and is the one on which the main assault is made. The grounds of attack are:
1. That the debt which it was made to secure, to the Bank of Nashville, was largely tainted with usui*y. It amounted to about $28,000, and that, together with a debt of §5,000 to Cooper and Cummings, and $1250 to Blakemore, were the debts secured by that deed upon land and slaves, worth largely more than the aggregate amount. But the imputation against the Bank debt is what we have to examine. At the date of this deed, the Bank had a judgment against Smith, Doak, Cummings and Blakemore, for about $18,000. Blake-more and Cummings were endorsers, and had filed a bill to be relieved from liability on some ground assumed by them as endorsers, perhaps on account of time given to the principals. The Bank had also filed a bill against Says, on account of his transactions with Smith in relation to his land, in which it was claimed that he was liable for about $8,000. Smith and Doak were insolvent, but Cummings and Smith not so considered. In this state of things, Hays, then having a large property, though much involved, entered into an agreement with the Bank, and with Cummings, Blakemore and Cooper, that if the Bank would loan him $15,000 on long time, and the others $6250, he would assume the said debt of $18,000, and secure the whole by a trust upon his land and slaves. This was agreed to, the money advanced, the judgment transferred, and the deed of trust executed. This, it is insisted, was usurious, to the ex *530 tent of tbe $18,000, because Hays was not bound for that, and as it was worthless, it could only be regarded as interest given for the loan of $15,000 or $21,000 advanced to him. If it were true that the judgment was worthless, and Hays in no way bound for it, the question insisted upon would arise and he difficult to meet. But such is not the case. Hays was alleged to be liable for $8,000 of it, and the endorsers were not insolvent, and perhaps would have been' unable to resist their liability, as might be inferred, from the fact xhat they entered into the arrangement by- which they had to raise a large amount of money to accomplish the adjustment by which Hays become bound for the debt to the Bank. There can be no serious doubt but that this was a fair, reasonable and bona fide transaction on all sides. The Bank was willing to enlarge its debt from $13,000 to $20,000, and extend the time to five years, upon the regular payment of interest, in order to get clear of further litigation; and Hays was willing to take the assignment of the judgment, for two-thirds of which he was attempted to be made liable, and perhaps expected to secure it all from the principals and endorsers, before the time given him would elapse and in the meantime get the $21,000 in cash, to aid him in the struggle to save his property against the large amount of judgments then obtained against him, to which it seems, from after developments, the most, if not all this money was applied, and proved insufficient to relieve it. He doubtless flattered himself, as most sinking, men do, that by obtaining time and sufficient present help, he would certainly be able to extricate himself from the ruin with which he was threatened by impending diffi *531 culties. This was doubtless his calculation, and was the operating inducement to make the proposition to which the Bank and the others, acceded, and which resulted in the arrangement in question. No extra interest was demanded, or given. Under these circumstances, the assignment of the $13,000 judgment cannot be regarded as an attempt to evade the usury laws; but a purchase and assignment, in a fair and legal transaction, upon motives and considerations satisfactory to both sides, and to which there can be no legal objections. It was not a case of fictitious debts, nor of worthless paper, as argued by complainants’ counsel.
2. The next ground of objection is, that the amount of property was unreasonably disproportionate to the debt secured, and the time of credit was so great, as to raise a presumption of fraud. It is true, that the land and slaves were worth greatly more than the debts, large as they were, but this was not unreasonable, as the property was bound by judgments and executions to-a vast amount, and in the involved condition of Hays, it was not improper to make the security thus ample.. And as it turned out, it was proved not to be excessive. There was no illegality either, in the extension of the credit to five years, as that could not affect other creditors injuriously, unless property to a greater amount than was necessary to pay the secured debts, was. thereby covered up and shielded from them, by which they were defeated or delayed in the collection of their debts, or some personal advantage was thereby intended to be .secured to the common debtor, to the injury of other creditors. The land was sold in about one month *532 afterwards, on tbe same time, to Thompson, and the proceeds, or his notes for the price, used in the discharge of the debts, secured. It is true that an excess remained after the payment of the secured debts. But before the complainants obtained judgments upon their claims, and secured to themselves any lien upon, or preference to the excess, by attachment or otherwise, the second deed of trust o'f 29th of November, 1856, was executed to secure other debts, to which, it is conceded, the whole balance of the proceeds of the land, as well as the slaves, and other things included in it, were appropriated, and will not be more than sufficient to discharge the preferred debts therein specified. If the object and effect of extending the time was to increase the fund, no one can complain, for it was to the advantage of all.
If a debtor has the right and power to appropriate his property to some creditors in preference to others, when he cannot pay all, of which, of course there can be no doubt, there is nothing in this transaction against law or morals. It is but the common case where some creditors are more fortunate, or more vigilant than others; the latter must loose where all cannot be saved.
It is admitted, that there will be no overplus after the payment of the debts secured in the two deeds of trust, both of which were made before the filing of these bills, and the complainants declined to go into an account to ascertain the fact, conceding that all the trust fund arising from the proceeds of the land, slaves and choses in action, conveyed in the deeds, would not be more than enough for that purpose. Consequently, as *533 we find the trust deeds were neither fraudulent in law or in fact, the bills were correctly dismissed.
We, therefore, affirm the decree, with costs.